## 57044. WILLIAMS v. THE STATE.

BIRDSONG, Judge.

Eddie J. Williams was convicted of five counts of robbery by intimidation and one count of an attempt to do the same and sentenced to serve 20 years. He brings this appeal enumerating four errors. *Held:*

1. In his first enumeration of error, Williams contends that the trial court erred in denying his motion to suppress the fruits of a search of appellant's automobile without a warrant. The facts show that an attempted robbery of a photo processing stand had just occurred. A description of the auto, an almost correct sequence of the numbers of the auto tag, and of the single male occupant of the auto, had all been broadcast as a police alert. Within a few minutes and only a short distance from the scene of the attempted robbery, cruising police officers observed a vehicle fitting the description, with those tag numbers and containing a single male of the description broadcast. The car was stopped, the appellant Williams arrested, and his car searched. Evidence was found that corresponded with items used by the robber in the attempted robbery.

Under the facts above delineated, we experience no difficulty in concluding that the officers had probable cause to stop the auto and arrest the occupant. It is settled law that an officer at the time of a lawful custodial arrest may, without a warrant, make a full search of the person of the accused (United States v. Robinson, 414 U. S. 218 (94 SC 467, 38 LE2d 427)), a limited area within the control of the person arrested (Chimel v. California, 395 U. S. 752 (89 SC 2034, 23 LE2d 685)), and of an automobile in his possession at the scene of the arrest for the discovery and preservation of criminal evidence (Adams v. Williams, 407 U. S. 143 (92 SC 1921, 32 LE2d 612)). See Chambers v. Maroney, 399 U. S. 42 (90 SC 1975, 26 LE2d 419, 428).

We are aware of our earlier decisions in *Love v. State,* 144 Ga. App. 728, 736 (242 SE2d 278) and *Hardwick v.*

*State,* 149 Ga. App. 291 (254 SE2d 384). However, we conclude that neither of those cases is controlling in view of the facts of this case. In *Love,* supra, the defendant Love was away from his car which was parked outside a motel and Love was arrested, on probable cause, on the second floor of the motel. The car was immobile, not under the control of the defendant, but was under the control of the police who could have obtained a warrant prior to the search. Thus, there existed no exigent circumstances to conduct a warrantless search, nor could the probable cause for the arrest furnish those exigent circumstances. There was no serious contention by the police that the search of Love's car was incident to the arrest. That decision rejects any premise of a search of an auto incident to an arrest.

In the *Hardwick* case, supra, the defendant Hardwick met an undercover agent at a public place to effect a drug sale. Hardwick indicated that the drugs were in his car which was parked outside the building. This court held that probable cause existed to arrest Hardwick in the building but that had the arrest occurred therein, as in the *Love* case, no exigent circumstances would exist since the car was immobile, not within the control of the defendant and could be secured by the police until a warrant could be obtained. The decision went on further to hold that to allow the defendant Hardwick to go to his car to move it to a more secluded place to effect the sale, was a subterfuge to create an exigent situation thereby improperly attempting to authorize a warrantless search. This court would not countenance such a subterfuge.

In this case, we are faced with the situation of a fleeing felon, fortuitously observed by a cruising police officer, who on probable cause, stopped and arrested the appellant Williams. Williams was in his car driving away from the scene. The search of the car was immediate and incident to the arrest. Under such circumstances, the warrantless arrest and search was proper. Code § 27-207 (a); *Newman v. State,* 237 Ga. 376, 380 (228 SE2d 790); *Taylor v. State,* 149 Ga. App. 30, 31 (1) (253 SE2d 428). This is true even though appellant had been arrested and removed to a nearby police car. *Phillips v. State,* 233 Ga. 800, 802-803 (213 SE2d 664). The first enumeration is

without merit.

2. In his second enumeration, appellant urges that the trial court erred in denying a motion to sever the six counts inasmuch as the conduct described extended over a 45-day period. Williams misconceives the law of severance. As to each count, the same individual was generally described by physical appearance, the same type of establishment was involved in each incident, the same technique was utilized in each robbery, and the same car was involved in each. The prime issue in the case was one of identity. The evidence of identity, though relating to different victims, was inextricably intertwined in all the various offenses charged. We conclude that it was not an abuse of discretion in the interest of justice for the trial court to refuse a motion for severance of the trial of the multiple charges where the crimes alleged were part of a continuous course of criminal conduct extending over a relatively short time, and from the nature of the entire course of conduct, it would be almost impossible to present to a jury evidence of one of the crimes without also permitting evidence of the others. *Stewart v. State,* 239 Ga. 588, 589 (238 SE2d 540); *Henderson v. State,* 227 Ga. 68, 76 (179 SE2d 76). We find no merit to this enumeration.

3. Appellant urges that the trial court erred in failing to grant a motion for directed verdicts of acquittal as to Counts 1, 2, and 5. In essence, Williams argues that the evidence of identification is inadequate to warrant conviction on those counts.

Our responsibility on appeal is not to weigh the evidence and give a de novo opinion on where the greater weight of the evidence lies but merely to determine if there is sufficient evidence to authorize the trial court's judgment. *Ridley v. State,* 236 Ga. 147 (223 SE2d 131); *Proctor v. State,* 235 Ga. 720 (221 SE2d 556). The evidence of the primary issue was in conflict, the jury resolved that issue against the appellant and there was some evidence adequate to support the verdict of the jury. *Griffin v. State,* 237 Ga. 532 (228 SE2d 908); *Dunn v. State,* 141 Ga. App. 853 (1) (234 SE2d 687). This enumeration lacks merit.

4. In his final enumeration of error, Williams urges that the trial court erred in allowing evidence of yet

another robbery by intimidation in another county but under nearly identical circumstances, and within the same general time frame. Evidence may be admitted to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. McCormick on Evidence 447, 449, § 190 (2d Ed., 1972); *Thomas v. State,* 239 Ga. 734, 736 (4) (238 SE2d 888); *Smith v. State,* 142 Ga. App. 1, 3 (234 SE2d 816). We find no error in the admission of this evidence.

*Judgment affirmed. Quillian, P. J., McMurray, P. J., Underwood and Carley, JJ., concur. Banke, J., concurs specially. Deen, C. J., and Smith, J., dissent. Shulman, J., not participating.*

SUBMITTED JANUARY 15, 1979 — DECIDED JULY 10, 1979 — REHEARING DENIED JULY 24, 1979.

*King & Dotson, Larry King,* for appellant.
*Robert E. Keller, District Attorney, James W. Bradley, Assistant District Attorney,* for appellee.

BANKE, Judge, concurring specially.
1. I concur with the judgment of affirmance.
2. While the dissent of Judge Smith contains considerable merit, based on *Yawn v. State,* 134 Ga. App. 77 (2) (213 SE2d 178), I read the defendant's motion to suppress and found the state carried its burden as to each ground stated therein. The transcript contains no offer to amend instanter. Further, from my view of the evidence, it was established that the automobile was used in the commission of a crime and thus became legally searchable under *Abrams v. State,* 223 Ga. 216 (154 SE2d 443).

SMITH, Judge, dissenting.
I dissent, as I would reverse the conviction because of the trial court's erroneous denial of appellant's motion to suppress.
"Thus the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated

exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' '[T]he burden is on those seeking the exemption to show the need for it.' In times of unrest, whether caused by crime or racial conflict or fear of internal subversion, this basic law and the values that it represents may appear unrealistic or 'extravagant' to some. But the values were those of the authors of our fundamental constitutional concepts. In times not altogether unlike our own they won — by legal and constitutional means in England, and by revolution on this continent — a right of personal security against arbitrary intrusions by official power. If times have changed, reducing everyman's scope to do as he pleases in an urban and industrial world, the changes have made the values served by the Fourth Amendment more, not less, important." Coolidge v. New Hampshire, 403 U. S. 443, 454-455 (91 SC 2022, 29 LE2d 564) (1971). The majority opinion sustains the warrantless search as one incident to a lawful arrest. I agree that the arrest was legal. However, I cannot agree that the ensuing search was "incident to" that arrest.

The evidence introduced on the motion to suppress showed that, at the time of the search of his car, appellant had been arrested, handcuffed and placed in a patrol car. He was in no position to harm the arresting officer or to destroy evidence. The following testimony by an officer on the scene of the arrest demands those conclusions: "Q. Now, when the searches were made, where was the defendant? A. When the searches were made? Q. Correct. A. Well, the search was made at the scene at the time of apprehension. He was standing near the vehicle and was probably in the patrol car a few minutes later in the back seat. Q. Was the defendant secured? A. Yes, sir, he was. Q. He was handcuffed? A. Yes, sir. Q. Was he under guard by the Police Department? A. Yes, sir. Q. And, so there was no possibility that the defendant would destroy any fruits of the crime in the automobile, is that correct? A. That's correct. Q. There was no possibility that the defendant could have obtained an offensive weapon from this automobile and harm the police officers, is that correct? A.

At this time, he could not."

That evidence mandates that the search was not justifiable as a search incident. "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control' — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence . . . 'The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime — things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest.' " Chimel v. California, 395 U. S. 752, 762-764 (89 SC 2034, 23 LE2d 685) (1969). "Searches incident to lawful custodial arrests compromise one of the narrow exceptions to the general principle that searches are unconstitutional unless authorized by a prior judicial warrant. The exception serves two purposes. First, it allows the arresting officer to disarm the suspect, thus protecting the officer's safety and foreclosing the possibility of escape. Second, the exception permits the officer to prevent the suspect from destroying evidence. These twin goals simultaneously provide the justification for an incident search and its permissible limits. A lawful incident search cannot extend beyond the perimeters

established by these goals." United States v. Edwards, 554 F2d 1331, 1336 (5th Cir., 1977). See also Code § 27-301 and *Lentile v. State,* 136 Ga. App. 611 (222 SE2d 86) (1975). *Newman v. State,* 237 Ga. 376 (228 SE2d 790) (1976) and *Taylor v. State,* 149 Ga. App. 30 (253 SE2d 428) (1979), cited by the majority, do not involve searches incident to arrests and thus are completely inapposite.

Neither did the trial court adjudge that the search was incident to the arrest. Rather, the court apparently sustained the search for another reason — that the police officers possessed probable cause to believe the automobile contained evidence of a crime and exigent circumstances prevented the acquisition of a search warrant. See *Love v. State,* 144 Ga. App. 728, 734 (242 SE2d 278) (1978) and Chambers v. Maroney, 399 U. S. 42 (90 SC 1975, 26 LE2d 419) (1970). I believe the trial court was correct in so concluding. The officers certainly had probable cause to think evidence connected with an attempted armed robbery existed in the car. Also, the officers stopped the car at a traffic light on a public highway — this exigent circumstance plus probable cause justified the warrantless search. The majority ignores the distinctions between those two exceptions to the warrant requirement. "[T]he search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest: 'The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.' " Chambers, supra, p. 49. The Supreme Court in Chambers noted that the mobility of a car in such a situation as the instant case may make the warrantless search of the car reasonable, and the court re-emphasized that only upon a like exigent circumstance "will the judgment of the police as to probable cause serve as a sufficient authorization for a search." Id, p. 51.

The warrantless search which occurred here, therefore, was reasonable. The majority reaches that conclusion, but with a faulty analysis. However, on the motion to suppress, the state presented no probative evidence showing that the fruits of the search, a

hat-mask, a toy gun, and some paper bags, were found in appellant's automobile or otherwise in his possession. The state's failure in that regard is the basis for my dissent.

On the hearing of the motion, there being more than one officer present at the time of the arrest, the state presented only one officer, who testified: "Q. Do you know who found this gun? A. No sir. I don't remember who found the gun . . . Q. You don't know who found the bags, do you? A. No, sir, I don't remember that, either. Q. So, it is your testimony today that the three items, the pistol, hat, and the bags that we're concerned with, you don't know who made the search, is that correct? A. Well, there were two or three or four different people who made the search. Myself and two or three others. Q. You don't know which of you did what? A. No, sir, I don't remember." The only officer who testified, therefore, had no personal knowledge of the search. The entirety of his testimony as to the location where the seized items were found was hearsay and provided no support for the state's contention that appellant possessed them. *Yawn v. State,* 134 Ga. App. 77 (2) (213 SE2d 178) (1975). The three eyewitness-victims in counts one, two, three and five, who testified at trial, could not positively identify appellant as the perpetrator. In fact, the one two-time victim admitted she could *not* state that appellant was the man. On counts one, two, three and five, the respective victim, who testified for the state, was the only witness to the crime. The erroneous admission of the evidence sought to be suppressed thus was very likely a substantial reason for the jury's decision to convict, and the admission cannot be said to have been harmless constitutional error. See Schneble v. Florida, 405 U. S. 427, 432 (92 SC 1056, 31 LE2d 340) (1972), where the court indicates reversal is required where "there is a reasonable possibility that the improperly admitted evidence contributed to the conviction."

I am authorized to state that Chief Judge Deen joins in this dissent.